UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KELLI B. SLADE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:16-CV-00030-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Kelli B. Slade ("Ms. Slade") appeals the Commissioner of Social Security's decision denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401–433, as well as Supplemental Security Income, 42 U.S.C. §§ 1381–1383f. (ECF No. 3.) Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court[1] REMANDS the Commissioner's decision for further consideration.

## BACKGROUND

Ms. Slade filed an application for Disability and Disability Insurance Benefits ("DIB"), as well as, Supplemental Security Income ("SSI") on April 24, 2012, alleging disability beginning March 25, 2011. (A.R. 155–160, 161–67.) The Social Security Administration denied Ms. Slade's claims initially on July 26, 2012, and again upon reconsideration on November 29,

---

[1] All parties in this case have consented to United States Magistrate Evelyn J. Furse conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit under 28 U.S.C. § 636(c) and F.R.C.P. 73. (ECF No. 17.)

1

2012.  (A.R. 59, 60, 81, 82.)  Thereafter, Ms. Slade timely requested a hearing before an Administrative Law Judge ("ALJ") on April 17, 2013.  (A.R. 122–23.)

An ALJ held a hearing on March 11, 2014 in Las Vegas, Nevada.  (A.R. 41–58.)  The ALJ found Ms. Slade not disabled on May 28, 2014.  (A.R. 22–40.) The Appeals Council denied Ms. Slade's request for review on November 16, 2015.  (A.R. 1–6.)  This Appeals Council denial made the ALJ's decision the final decision of the Commissioner.

Ms. Slade brought this action to appeal the Commissioner's decision pursuant to 24 U.S.C. § 405(g), which provides for judicial review of the defendant's final decision.

### A.  Factual History

An automobile accident at age twelve injured Ms. Slade, resulting in chronic back pain.  (A.R. 282, 339, 458.)  This pain worsened in 2005 making work more difficult.  (A.R. 458.)  She began receiving pain medication and injections for the pain.  (A.R. 458.)  In March 2011, Ms. Slade received a cervical spine steroid injection that caused a cervical spine hematoma.  (A.R. 278, 282.)  An MRI of her spine showed that the hematoma caused cervical spinal cord compression.  (A.R. 285, 307.)  Eventually Ms. Slade underwent a C6-C7 laminectomy and removal of the hematoma to alleviate the pain.  (A.R. 287.)  An MRI after the surgery showed post-surgical changes at C6-T1 and small amounts of fluid within the postsurgical space.  (A.R. 365.)  Ms. Slade continued to complain of neck pain, upper back pain, and pain in her upper extremities.  (A.R. 387.)  Physical examinations showed decreased range of motion in the cervical spine and decreased reflexes in both the left and right triceps and biceps.  (A.R. 390.)  In October 2012, the record reflects that Ms. Slade had difficulty using a knife and fork due to pain in her upper extremities.  (A.R. 458.)  She had decreased range of motion in her neck.  (A.R.

462.) She had reduced motor strength, decreased sensation, and decrease reflexes in her upper extremities. (A.R. 462, 463.) A Romberg test showed some instability. (A.R. 462.)

Ms. Slade also suffered from headaches since the hematoma. She was diagnosed with chemical meningitis, a severe headache caused by neurosurgical procedures. (A.R. 314–320.) Ms. Slade consistently complained of headaches throughout the record. (A.R. 399, 481, 515.)

In February 2014, Dr. Rox Burkett, reviewed Ms. Slade's entire file and submitted a report and a residual functional capacity assessment. (A.R. 532–38.) Dr. Burkett noted that Ms. Slade had severe degenerative disc disease in her cervical spine confirmed by multiple doctors including specialists. (A.R. 536–37.) Dr. Burkett noted that even the DDS examiner stated Ms. Slade had credible neck pain and limited strength and range of motion but did not reflect this finding in his residual functional capacity. (A.R. 537.)

Dr. Burkett stated that Ms. Slade had the diagnoses of advanced degenerative disease of the C-spine with chronic pain and weakness, as well as, migraine headaches. (A.R. 532.) He stated she has significant sustainable weakness in her upper extremities. (A.R. 532.)

### B. Hearing Testimony

At the hearing, Ms. Slade testified she does not drive because she has difficulty turning her head and keeping her foot on the accelerator. (A.R. 44.) Ms. Slade stated that her pain runs along her entire spine. (A.R. 46.) The pain radiates into her shoulders, and her fingertips are tingly and painful. (A.R. 46.) She has difficulty gripping things. (A.R. 46.) She has headaches. (A.R. 46.) Ms. Slade's mother helps with most of the daily activities including helping her dress and shower. (A.R. 47.) Ms. Slade testified that at least once a week, the headaches are bad enough that she cannot perform any activities. (A.R. 50.)

### C. ALJ Decision

In his decision, the ALJ found that Ms. Slade had the severe impairments of degenerative disc disease of the cervical spine, status post discectomy, status post epidural hematoma, and chronic pain syndrome.  (A.R. 27 (mistakenly noting lumbar degeneration in the title, but correctly discussing cervical degeneration).)  At step 3, the ALJ found that Ms. Slade did not meet a listing.  (A.R. 28.)  The ALJ found that Ms. Slade could perform light work with the following limitations: never able to climb ropes and scaffolds, and occasionally able to climb ladders and stoop, limited to frequent overhead reaching bilaterally.  (A.R. 28.)  The ALJ found that with this residual functional capacity, Ms. Slade could perform past relevant work.  (A.R. 33.)  The ALJ also found other work existed in the national economy that Ms. Slade can perform.  (A.R. 33–35.)  Therefore, the ALJ found Ms. Slade not disabled.  (A.R. 35.)

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether her findings are supported by "substantial evidence in the record and whether the correct legal standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (quotation omitted).  The Court may neither reweigh the evidence nor substitute its judgment for the Commissioner's.  *Id*.

In its review, the Court should consider the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.  *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).  However, the reviewing Court should not reweigh the evidence or substitute its own judgment for that of the ALJ.  *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  Further, the Court "may not 'displace the agenc[y's] choice between two fairly

conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'" *Lax* at 1084 (alteration in original) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Lastly, the "[f]ailure to apply the correct legal standard or to provide this Court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (alteration in original) (citing *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)).

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs and oral arguments. The Court finds as follows:

## ANALYSIS

Ms. Slade raises two issues on appeal. 1) Whether the ALJ erred by failing to evaluate properly the medical opinion evidence, specifically the opinion of Dr. Burkett; and 2) Whether the ALJ erred by failing to include specific limitations in Ms. Slade's residual functional capacity assessment for headaches and upper extremity limitations. For reasons set forth below, the Court remands the ALJ's decision for further analysis regarding Ms. Slade's residual functional capacity. On remand, the ALJ must address the medical evidence as to Ms. Slade's upper extremity limitations. In addition, the ALJ should further explain his analysis of Ms. Slade's headaches as the ALJ failed to address evidence that exists indicating Ms. Slade's headaches are not under control as found by the ALJ.

### I. The ALJ Did Not Err in his Evaluation of Dr. Burkett's Opinion.

On appeal, Ms. Slade argued that the ALJ did not properly weigh the opinions of Dr. Burkett, an examining source. The ALJ gave Dr. Burkett's opinions "very little weight" in his decision. (A.R. 33.) This Court finds that the ALJ applied the correct legal standard in evaluating Dr. Burkett's opinion based on the explanation he provides and that substantial

evidence supports his conclusion.  Dr. Burkett found that Ms. Slade could sit four or five hours per work day, could stand or walk one or two hours per work day, must lie down one or two hours per work day, could not lift any amount of weight, and could not perform work on a regular and continuing basis.  (A.R. 32.)  The ALJ concluded that Ms. Slade's daily activities are "relatively intact" and that Dr. Burkett's findings and limitations are unsupported by and inconsistent with Ms. Slade's own reported activities.  (A.R. 32–33.)  The ALJ further explained that the objective medical evidence and the record as a whole show unremarkable findings and do not note the type of restrictions indicated by Dr. Burkett.  (A.R. 32–33.)  Further, the ALJ discounted Dr. Burkett's opinion because he does not serve as Ms. Slade's treating physician.  (A.R. 33.)  The ALJ articulated valid reasons, supported by substantial evidence, for according little weight to the opinion of Dr. Burkett, therefore the Court finds no error on this issue.

## II. The ALJ Erred in his Assessment of Ms. Slade's Residual Functional Capacity.

Social Security Ruling 96-8p requires that when making findings concerning the claimant's residual functional capacity, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).  The ALJ does this assessment on a function by function basis, including both exertional and nonexertional limitations for both severe and nonsevere impairments.  SSR 96-8p *5.  Finally, the RFC must include a resolution of any conflicts in the evidence.  SSR 96-8p *7.  The ALJ must provide specific support with references to the record for rejection of a claimant's testimony.  *McGoffin v. Barnhart*, 288 F. 3d 1248, 1254 (10th Cir. 2002).  If the ALJ fails to provide specific support for his assessed limitations, then the

reviewing court will remand the case for further consideration. *Id*. In this case, the ALJ failed to assess the medical evidence regarding Ms. Slade's upper extremity impairments and headaches properly.

The Record contains evidence showing Ms. Slade has limited use of her upper extremities. Medical exams show that she has significant weakness in her upper extremities with 3/5 strength noted in her grip and intrinsic hand muscles and 4-/5 strength in her wrists. (A.R. 462.) The Record reflects pain associated with numbness in her hands and legs with minimal activity, such as lifting two to three pounds. (A.R. 398, 405.) Her pain interferes with her sleep, concentration, mood, family functions, recreation, and employment. (A.R. 388.) Ms. Slade has restricted range of motion of her neck; insufficient to allow her to look up. (A.R. 389.)

The Commissioner argues that the ALJ's findings regarding Ms. Slade's upper extremity limitations are not inconsistent with the evidence of record. (ECF No. 25 at 10.) The Commissioner argues that the limitations assessed by the ALJ were not inconsistent with "the evidence showing that she had normal strength on the majority of examinations and normal range of motion." *Id*. However, the ALJ failed to account for specific upper extremity testing that showed evidence of reduced range of motion in the upper extremities, reduced grip strength, and reduced reflexes. (A.R. 398, 405, 462.) Case law has made clear that the ALJ cannot pick and choose from the evidence using only the evidence that supports his theory, he must look to all the evidence of record. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). In this case, the ALJ failed to analyze the records that tend to show Ms. Slade's upper extremity limitations. This failure leaves this Court with no way to follow the ALJ's analysis regarding this issue. Therefore, the Court must remand to allow the ALJ to explain his analysis of Ms. Slade's upper extremity limitations.

Similarly, the ALJ found Ms. Slade's migraine headaches not severe because they were "adequately controlled or treated." (A.R. 28.) To support this finding, he cited to two records: 1) a single office visit in July of 2011 where Ms. Slade said her headaches were "better", and 2) an MRI brain scan. (A.R. 28.) However, neither of these records demonstrates that Ms. Slade's headaches are not severe.

At the hearing Ms. Slade described the headaches as an ongoing problem. She stated that at least once a week, her headaches are so bad that she is unable to continue her normal activities and she has associated symptoms such as severe pain, upset stomach, light sensitivity, and audio sensitivity. (A.R. 50.) The medical records consistently describe these headaches as an ongoing problem, even after the July 2011 record cited by the ALJ as evidence the headaches were controlled. (A.R. 399, 481, 515.) In fact, even in the visit cited by the ALJ, Ms. Slade's headaches were noted to be "still there, butt [sic] better." (A.R. 316.) The ALJ remarks that Ms. Slade received only conservative treatment of medication for her migraines but neglects to explain what treatment he would expect to see for headaches that would convince him the headaches impacted Ms. Slade's functioning.

Many courts have noted that migraines present a particular difficulty. *See, e.g.*, *Groff v. Comm'r of Soc. Sec.*, No. 7:05-CV-54, 2008 WL 4104689, at *6–8 (N.D.N.Y. Sept. 3, 2008) (unpublished) (recognizing difficulty of objectively identifying migraines as medically determinable impairments); *Federman v. Chater*, No. 95 Civ. 2892 (LLS), 1996 WL 107291, at *2–3 (S.D.N.Y. Mar. 11, 1996) (unpublished) (same); *see also Abdon v. Astrue*, No. 10-96-GWU, 2010 WL 5391452, at *5 (E.D. Ky. Dec. 22, 2010) (unpublished) (noting difficulty of evaluating subjective allegations of pain stemming from migraines for purposes of evaluating pain in the context of determining the RFC); *McCormick v. Sec'y of Health & Human Servs.*,

666 F. Supp. 121, 123 (E.D. Mich. 1987) (noting "[migraine] headaches are not traced easily to an objective medical condition"), *aff'd,* 861 F.2d 998 (6th Cir. 1988). In *Groff*, the district court acknowledged "the elusive task a doctor faces in diagnosing this impairment as there exists no objective clinical test which can corroborate the existence of migraines." *Groff*, 2008 WL 4104689, at *7–8. The *Groff* court cited medical literature noting

> [t]he cause [of a migraine] is unknown and the pathophysiology is not fully understood.... The mechanism for migraines is not well defined, but several triggers are recognized[, including] insomnia, barometric pressure change, and hunger.... Symptoms usually follow a pattern in each patient.... The patient may have attacks daily or only once every several months. Diagnosis is based on the symptom patterns when there is no evidence of intracranial pathologic changes. Migraine is more probable when the patient has a family history of migraine.... No diagnostic tests are useful, except to exclude other causes. Treatment depends on the frequency of attacks and the presence of comorbid illness. In general, treatment can be classified as prophylactic, abortive, or analgesic.

*Id.* (alteration in original) (quoting *The Merck Manual* 1376 (17th ed. 1999)). Thus, the *Groff* court found error at step two where the ALJ failed to consider the claimant's subjective complaints in finding the claimant's migraines did not constitute a severe medically determinable impairment. *Id.* at *8. Likewise, in *Federman*, the district court held that because no test exists for migraine headaches, the ALJ could not rely solely on the absence of objective evidence to support a finding that the claimant's migraines did not constitute a severe medically determinable impairment. *Federman*, 1996 WL 107291, at *2 (citations omitted).

The ALJ has not addressed the records in a way that allows this Court to follow his evaluation of Ms. Slade's headaches. The ALJ's opinion does not provide substantial evidence to support his decision that Ms. Slade's headaches were adequately controlled with medication. The ALJ must provide more analysis of the functional effects of Ms. Slade's headaches and upper extremity limitations on her RFC. Therefore, the Court finds the ALJ's RFC is not

supported by substantial evidence, and this Court REMANDS his decision for further consideration.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court REMANDS this case to the Commissioner. On remand, the Commissioner will specifically consider and discuss the evidence regarding Ms. Slade's upper extremity impairments and headaches and their impact on her residual functional capacity assessment.

DATED this 1st day of March, 2017.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge